# In the United States Court of Federal Claims

No. 17-868C
(Filed: October 2, 2017)

```
*************************************
TORRES ADVANCED ENTERPRISE          *
SOLUTIONS, LLC,                     *
                                    *
            Plaintiff,              *
                                    *
 v.                                 *
                                    *
THE UNITED STATES,                  *
                                    *
            Defendant,              *
                                    *
and                                 *
                                    *
G4S JOINT VENTURE,                  *
                                    *
            Defendant-Intervenor.   *
*************************************
```

Postaward Bid Protest; Proposed
Redactions; Presumption of Public Access
to Court Records; Protective Order;
Competitive Harm; Information Concerning
Performance of Incumbent Contract;
Information in the Contractor Performance
Assessment Reporting System (CPARS);
Information From Proposals; Price
Information; Information Supplied via
Declaration

George R. Calhoun, Washington, DC, for plaintiff.

Tanya B. Koenig, United States Department of Justice, Washington, DC, for defendant.

Gerald H. Werfel, McLean, VA, for defendant-intervenor.

## OPINION AND ORDER

**SWEENEY**, Judge

In this postaward bid protest, plaintiff Torres Advanced Enterprise Solutions, LLC ("Torres") contended that the United States Department of State ("State Department") improperly awarded a contract for local guard services at a United States embassy to defendant-intervenor G4S Joint Venture ("G4S"). After the court denied Torres's motion for a preliminary injunction, Torres voluntarily dismissed its complaint. The only remaining issue is what information should be redacted from the court's July 31, 2017 Opinion and Order–and the documents filed by the parties under seal–before it is released to the public.

## I. BACKGROUND

Torres filed its bid protest on June 26, 2017.  In its complaint, Torres alleged that the State Department exaggerated Torres's routine performance issues during the incumbent contract into major deficiencies.  Torres further alleged that the State Department performed a premature, abbreviated evaluation of its performance of the incumbent contract, and then entered the performance evaluation into the Contractor Performance Assessment Reporting System ("CPARS") so that the Technical Evaluation Panel ("TEP") could use the negative information contained in the evaluation when assessing Torres's proposal for the follow-on contract.  Along with its complaint, Torres filed a motion for a preliminary injunction, and then, two weeks later, a motion to supplement the administrative record and for expedited discovery ("motion to supplement").

As is typical in bid protests, the court entered a protective order "to safeguard the confidentiality" of "competition-sensitive or otherwise protectable" information.  Protective Order 1.  In the protective order, "protected information" was defined as:

> information that must be protected to safeguard the competitive process, including source selection information, proprietary information, and confidential information contained in:
>
> (a)  any document (e.g., a pleading, motion, brief, notice, or discovery request or response) produced, filed, or served by a party to this litigation; or
>
> (b)  any deposition, sealed testimony or argument, declaration, or affidavit taken or provided during this litigation.

Id. ¶ 1.  The parties were required to file documents containing protected information under seal.  In addition, the protective order contained procedures for redacting protected information from documents that would be made available to the public and for the resolution by the court of any disputes concerning what information should be protected.  Defendant filed both the administrative record and the corrected administrative record under seal.

In its July 31, 2017 Opinion and Order, the court denied both Torres's motion to supplement and Torres's motion for a preliminary injunction.  The court filed its decision under seal and afforded the parties the opportunity to propose the redaction of protected information.  In a September 15, 2017 joint status report, the parties indicated that they could not agree on what information should be redacted from the court's decision.  Torres proposed extensive redactions, most of which related to the State Department's assessments of Torres's performance of the incumbent contract, while defendant and G4S jointly proposed more limited redactions focused on Torres's and G4S's proprietary information.  The parties explained the basis for their

proposed redactions and responded to the arguments presented by their opponents.[1]  The court
addresses these arguments below.

## II.  DISCUSSION

### A.  Legal Standard

As all three parties recognize, there is a well-established presumption in favor of public
access to court records and proceedings.  See Nixon v. Warner Commc'ns, 435 U.S. 589, 597
(1978) ("[T]he courts of this country recognize a general right to inspect and copy public records
and documents, including judicial records and documents."); In re Violation of Rule 28(d), 635
F.3d 1352, 1356 (Fed. Cir. 2011) ("There is a strong presumption in favor of a common law right
of public access to court proceedings.").  This presumption applies to court records in civil
adjudicatory proceedings, AmerGen Energy Co. by & Through Exelon Generation Co. v. United
States, 115 Fed. Cl. 132, 136 (2014), including the records maintained by the United States Court
of Federal Claims ("Court of Federal Claims"), 28 U.S.C. § 174(b) (2012); Pratt & Whitney
Canada Inc. v. United States, 14 Cl. Ct. 268, 273 (1988).

The presumption of public access, however, "is not absolute.  Every court has supervisory
power over its own records and files, and access [may be] denied where court files might . . .
become a vehicle for improper purposes." Nixon, 435 U.S. at 598.  Thus, "the decision as to
access is one best left to the sound discretion of the trial court, a discretion to be exercised in
light of the relevant facts and circumstances of the particular case." Id. at 599.  In exercising that
discretion, a court "weigh[s] the interests advanced by the parties in light of the public interest
and the duty of the courts." Id. at 602; accord AmerGen Energy, 115 Fed. Cl. at 137 ("[T]his
court must weigh the private interests advanced by the parties against the public's interest in
access to judicial proceedings.").  The party seeking to restrict access to court records bears a
"heavy burden of overcoming the presumption of open judicial records." Pratt & Whitney, 14
Cl. Ct. at 275.  Indeed, only a "compelling justification" will suffice to overcome the
presumption. Id. at 274; accord In re Violation of Rule 28(d), 635 F.3d at 1358 (remarking that
another federal appellate court had concluded that "'only the most compelling showing can
justify' limitations on the disclosure of 'testimony or documents actually introduced at trial'"
(quoting Poliquin v. Garden Way, Inc., 989 F.2d 527, 533 (1st Cir. 1993))); AmerGen Energy,
115 Fed. Cl. at 137 ("[A] party seeking to prevent disclosure of information submitted as
evidence in dispositive judicial proceedings, whether at trial or in connection with a motion for
summary judgment, must demonstrate compelling reasons for keeping such information out of
public view."); see also Pratt & Whitney, 14 Cl. Ct. at 276 ("The common law right of access is
particularly strong with respect to materials considered by a court.").

---

[1]  Torres nevertheless requested the opportunity to file a brief in response to the other
parties' arguments.  Because Torres has responded to the arguments jointly advanced by
defendant and G4S, and because Torres has not stated why its response was inadequate, the court
denies Torres's request.

One circumstance in which courts will deny public access to its records is when those records contain "business information that might harm a litigant's competitive standing." Nixon, 435 U.S. at 598. Indeed, the protective order in this case allows for the redaction of "information that must be protected to safeguard the competitive process, including source selection information, proprietary information, and confidential information . . . ." Protective Order ¶ 1; see also In re Violation of Rule 28(d), 635 F.3d at 1360 (noting that the court's local rule–Rule 28(d)–makes it "clear that the parties must confine their confidentiality markings [in their briefs] to information covered by a protective order"); Def. Tech., Inc. v. United States, 99 Fed. Cl. 103, 103 n.* (2011) (rejecting the proposed redaction of information that did not fall within the protective order's definition of protected information); Magnum Opus Techs., Inc. v. United States, 94 Fed. Cl. 512, 519 n.* (2010) (rejecting proposed redactions "not concerning 'protected information' as defined in the protective order"); cf. Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. 672, 724 (2010) ("The purpose of redaction . . . is to safeguard the competitive process, not to withhold information that a party frowns on making public."). However, if the redactions would be so extensive as to render the affected document incomprehensible, the court may exercise its discretion and decline to make them. See, e.g., In re Violation of Rule 28(d), 635 F.3d at 1360 (noting that "[t]he confidentiality markings in this case were so extensive that the non-confidential version of the brief is virtually incomprehensible" and that such "an improper casual approach to confidentiality markings . . . ignores the requirements of public access[ and] deprives the public of necessary information"); Allied Tech. Grp., Inc. v. United States, 94 Fed. Cl. 16, 23 n.1 (2010) ("[I]f the court were to accept all of [the] proposed redactions, it would . . . result[] in a nearly incomprehensible public document."); MVM, Inc. v. United States, 46 Fed. Cl. 137, 137 n.* (1999) ("If the language were redacted, the opinion would be incomprehensible.").

## B. The Parties' Proposed Redactions

Torres requests that the court redact from its July 31, 2017 Opinion and Order "text that quotes or reflects source-selection information, proprietary information, and confidential information that a competitor could use in future competitions to gain an unfair advantage over Torres," Joint Status Report 3, including:

> (1) "all information that derives from nonpublic CPARS evaluations of Torres'[s] contract performance," id. (referring to pages 5-21 of the court's decision);
>
> (2) "information regarding the [TEP's] assessment of Torres'[s] and G4S'[s] proposals and references to specific price proposals and evaluations thereof," id. (referring to pages 24-30 of the court's decision);
>
> (3) "the corresponding information as it appears in the Court's analysis," id. at 6 (referring to pages 38-51 of the court's decision); and

(4) "nonpublic information that was disclosed to the Government and this Court in affidavits and declarations that Torres submitted in support of its motions," id. (referring to pages 35-37 of the court's decision).

With respect to the first category, Torres specifically proposes the redaction of the substantive contents of deduction letters, a major nonconformance notice, a cure notice, and other correspondence it received (along with its responses to that correspondence) during its performance of the incumbent contract.  Torres also proposes the redaction of some, but not all, of the information contained in the CPARS regarding its performance of the incumbent contract; in particular, Torres seeks the redaction of the State Department's specific concerns with its performance and its responses to those concerns.

Next, with respect to the second category, Torres specifically proposes the redaction of information contained in its and G4S's proposals, the State Department's initial total evaluated prices for both offerors, the State Department's final total evaluated price for Torres, the independent government price estimate, the portions of discussion questions and responses that concern G4S's proposed price, the portions of discussion questions that concern Torres's performance of the incumbent contract, the TEP's assessment of Torres's performance of the incumbent contract, and the State Department's analysis of whether G4S was a responsible offeror.

Then, with respect to the third category, Torres's proposed redactions align with the redactions it proposed in the first two categories.  Finally, with respect to the fourth category, Torres specifically proposes the redaction of the contents of an electronic-mail message, information concerning its investigation of the contents of that message, and certain details regarding its post-2010 success rate in being awarded local guard services contracts by the State Department.

In contrast to the extensive redactions proposed by Torres, defendant and G4S jointly propose the redaction only of information contained in the proposals, the total evaluated prices, the independent government price estimate, and the portions of discussion questions and responses that concern G4S's proposed price.

## C. Information Related to Torres's Performance of the Incumbent Contract

The bulk of the redactions proposed by Torres relate to the State Department's assessments of Torres's performance of the incumbent contract.  These assessments were contained in correspondence between Torres and the State Department during contract performance, as well as in performance evaluations submitted to the CPARS.  Torres contends that the information in these assessments that it seeks to withhold from the public "is quintessential source-selection information that should be protected from disclosure to prevent Torres'[s] competitors from gaining an unfair advantage in future solicitations."  Id. at 4.

As defined by federal law, source selection information is

any of the following information prepared for use by a Federal agency to evaluate a bid or proposal to enter into a Federal agency procurement contract, if that information previously has not been made available to the public or disclosed publicly:

(A)  Bid prices . . . .

(B)  Proposed costs or prices . . . .

(C)  Source selection plans.

(D)  Technical evaluation plans.

(E)  Technical evaluations of proposals.

(F)  Cost or price evaluations of proposals.

(G)  Competitive range determinations . . . .

(H)  Rankings of bids, proposals, or competitors.

(I)  Reports and evaluations of source selection panels, boards, or advisory councils.

(J)  Other information marked as ''source selection information'' based on a case-by-case determination by the head of the agency, the head's designee, or the contracting officer that its disclosure would jeopardize the integrity or successful completion of the Federal agency procurement to which the information relates.

41 U.S.C. § 2101(7) (2012); accord Federal Acquisition Regulation ("FAR") 2.101 (2017). "[S]ource selection information must be protected from unauthorized disclosure in accordance with [FAR 15.207], applicable law, and agency regulations."  FAR 3.104-4(b); see also 41 U.S.C. § 2102(a)(1) (providing that source selection information may not be disclosed "before the award of a Federal agency procurement contract to which the information relates"); FAR 15.207(b) ("Proposals shall be safeguarded from unauthorized disclosure throughout the source selection process.").

Although past performance information is not specifically identified as source selection information in 41 U.S.C. § 2101(7) or FAR 2.101, past performance information that is entered into the CPARS must be marked as source selection information pursuant to FAR subpart 42.15.

Under that subpart, past performance information is "relevant information, for future source selection purposes, regarding a contractor's actions under previously awarded contracts or orders." FAR 42.1501(a). Past performance information is reported in past performance evaluations, FAR 42.1501(b), and these evaluations, which include the initial evaluation, the contractor's response, and any review comments, FAR 42.1503(d), (f), must be submitted to the CPARS, FAR 42.1502(a); FAR 42.1503(f). Past performance evaluations submitted to the CPARS

> may be used to support future award decisions, and should therefore be marked "Source Selection Information". . . . The completed evaluation shall not be released to other than Government personnel and the contractor whose performance is being evaluated during the period the information may be used to provide source selection information. Disclosure of such information could cause harm both to the commercial interest of the Government and to the competitive position of the contractor being evaluated as well as impede the efficiency of Government operations.

FAR 42.1503(d); cf. FAR 42.1503(f) ("Agencies shall ensure that appropriate management and technical controls are in place to ensure that only authorized personnel have access to the data and the information [is] safeguarded in accordance with 42.1503(d).").

> Moreover, a nonbinding CPARS guidance document provides:
>
> All CPARS information is treated as "For Official Use Only/Source Selection Information" in accordance with FAR 2.101 and 3.104 and 42.1503. A Contractor Performance Assessment Report (CPAR) is source selection information because it supports ongoing source selections. It contains sensitive data concerning a contractor's performance under a specific business arrangement as covered by the FAR. A CPAR has the unique characteristic of always being pre-decisional in nature. . . . Access to the CPARS . . . and other performance information is restricted to those individuals with an official need to know.

Guidance for the Contractor Performance Assessment Reporting System (CPARS) v (Aug. 2017), https://www.cpars.gov/pdfs/CPARS-Guidance.pdf; see also id. ("This guidance is non-regulatory in nature and intended to provide useful information and best practices to the workforce for using the CPARS. . . . [T]he guide . . . should be read in conjunction with FAR Part 42.15 and other FAR Parts related to past performance information. . . . If any inconsistencies are found between this document and the FAR or agency FAR supplements, the FAR then agency's supplements, in that order, take precedence."). The guidance document further provides:

6.1  CPAR Markings and Protection

Those granted access to the CPARS are responsible for ensuring that CPARs are appropriately marked and handled.  All CPAR forms, attachments and working papers must be marked "FOR OFFICIAL USE ONLY/SOURCE SELECTION INFORMATION – see FAR 2.101, 3.104, and 42.1503" . . . .

CPARs may also contain information that is proprietary to the contractor. Information contained on the CPAR, such as trade secrets and protected commercial or financial data obtained from the contractor in confidence, must be protected from unauthorized disclosure.  . . .  The following guidance applies to protection both internal and external to the Government:

6.1.1  Internal Government Protection

CPARs must be treated as source selection information at all times.  Information contained in the CPAR must be protected in the same manner as information contained in source selection files.  . . .

6.1.2  External Government Protection

Due to the sensitive nature of CPARs, disclosure of CPAR data to . . . other entities outside the Government[] is strictly prohibited.

6.2  Freedom of Information Act [("FOIA")]

Contractor performance information is privileged source selection information. As these evaluations may be used to support future award decisions, the completed evaluation shall not be released to other than Government personnel and the contractor whose performance is being evaluated.  This information is not releasable under the [FOIA].  . . .  Performance evaluations may be withheld from public disclosure as they are procurement sensitive.

Id. at 25-26.

Read together, the statute, regulations, and guidelines constrain the disclosure of past performance information contained in the CPARS.[2]  However, these constraints apply to

_____

[2]  Torres relies on another FAR provision for the proposition that government officials are prohibited "from publicizing any source-selection material if it is subject to an exemption from disclosure under" the FOIA, 5 U.S.C. § 552 (2012), and from publishing "past performance reviews."  Joint Status Report 5.  However, the provision relied upon by Torres, FAR 9.105-2(b)(2)(iii)-(iv), is not relevant in this bid protest because it concerns information posted in the

-8-

procuring agencies and their officials, not to the Court of Federal Claims.[3]  The court is instead guided by its previously issued protective order, which provides that "source selection information, proprietary information, and confidential information" should not be made publicly available if its disclosure would adversely affect "the competitive process . . . ."  Protective Order ¶ 1.  In other words, a party seeking to withhold information in court records from the public must demonstrate that the information's disclosure would cause the party competitive harm.  See also AmerGen Energy, 115 Fed. Cl. at 140-41 (remarking that because broad, nebulous, or conclusory allegations of competitive harm are insufficient to establish good cause for the issuance of a protective order under Rule 26(c)(1) of the Rules of the United States Court of Federal Claims, "such allegations are insufficient to meet the more stringent compelling reasons standard required to rebut the presumption of public access with respect to judicial records").

Torres argues that the disclosure of information related to its performance of the incumbent contract would cause it competitive harm:

> Making such information public would give Torres'[s] competitors an unfair advantage over Torres in future competitions:  competitors would have information on Torres'[s] prior performance reviews while Torres would have little to no performance information on its competitors.  That information would enable competitors, potentially, to overbid in "fair value" competitions based on a belief that they could use the [incumbent contract] past-performance evaluation against Torres.  Certainly, competitors would use the information proposed to be redacted against Torres with respect to private contracts.  The Court should preclude that harm by accepting Torres'[s] proposed redactions, which preserve the Court's analysis and the meaning of the Opinion, without revealing source-selection details that could be used against Torres in competitive bidding.

---

Federal Awardee Performance and Integrity Information System ("FAPIIS"), which is used by the government to document nonresponsibility determinations, the submission of defective cost or pricing data, terminations for default, human trafficking, and repeated failures to pay small business subcontractors.  See FAR 9.105-2(b)(2)(i); FAR 42.1503(h).  The disclosure rules that apply to information contained in the FAPIIS are different from the disclosure rules that apply to past performance information contained in the CPARS.  Compare FAR 42.1503(d) (CPARS), with FAR 42.1503(h) (FAPIIS).

[3]  Similarly, the FOIA does not apply to the Court of Federal Claims.  See 5 U.S.C. § 552(a) (limiting the disclosure requirements to "[e]ach agency"); see also id. §§ 551(1) (excluding "the courts of the United States" from the definition of "agency"), 552(f) (defining "agency" as including "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government . . . , or any independent regulatory agency").  Accordingly, the court does not address the FOIA-related regulations and case law relied upon by the parties in support of their positions regarding the redaction of information in the court's July 31, 2017 Opinion and Order.

Joint Status Report 5-6; accord id. at 7 ("Torres'[s] proposed redactions . . . are limited to nonpublic commercial information that Torres'[s] competitors could use to gain an unfair advantage in federal solicitations or private contract negotiations."). However, the specific "harm" that Torres identifies–potential overbidding by its competitors–is not actually harmful to Torres. As an initial matter, procuring agencies within the federal government will have access to Torres's past performance information in the CPARS regardless of whether that information is available to its competitors. Thus, a procuring agency's assessment of Torres's past performance would not be affected by the prices proposed by Torres's competitors in a particular procurement. Moreover, all other things being equal, an offeror who submits a higher price is at a disadvantage in any given procurement. Consequently, Torres would not be adversely affected if a competitor increased its proposed price in response to its knowledge of Torres's past performance. In short, a competitor proposing a higher price than it otherwise would have proposed cannot harm Torres.

Furthermore, Torres has not identified any specific harm that it would suffer, when competing for private contracts, from the disclosure of information related to its performance of the incumbent contract. Instead, Torres generally avers that competitors would use the information against it. Such a conclusory allegation of harm is insufficient to support Torres's redaction request.

In sum, Torres has not advanced a compelling justification for the court to redact information related to Torres's performance of the incumbent contract from its July 31, 2017 Opinion and Order.

### D. Information Contained in the Proposals, Price-Related Information, and the Responsibility Determination

Torres next requests that the court redact from its July 31, 2017 Opinion and Order information contained in or derived from its and G4S's proposals. Defendant and G4S agree with Torres that information taken directly from the proposals, the State Department's initial total evaluated prices for both offerors, the State Department's final total evaluated price for Torres, the independent government price estimate, and the portions of discussion questions and responses that concern G4S's proposed price should be redacted from the decision. However, unlike Torres, defendant and G4S do not propose the redaction of the State Department's analysis of whether G4S was a responsible offeror.

The information that all three parties agree should be redacted from the court's decision is protected information as defined by the protective order. Specifically, the disclosure of information contained in Torres's and G4S's proposals, total evaluated prices, and price-related discussions would provide Torres, G4S, and their competitors with insight into how Torres and G4S approach procurements of local guard services contracts, putting Torres and G4S at a competitive disadvantage. Accordingly, the court will redact that information from its decision.

With respect to the State Department's analysis of whether G4S was a responsible offeror, the court finds that this information need not be redacted from its decision, for two reasons. First, the analysis does not contain any specific information from G4S's proposal; rather, it reflects in general terms that the State Department checked the relevant databases, reviewed G4S's proposal, and determined that there was no information preventing it from deeming G4S to be a responsible offeror. Such general statements would not result in competitive harm to G4S. Second, G4S does not propose that the analysis be redacted from the court's decision, which suggests that G4S does not consider the analysis to be protected information. In short, there is no compelling justification for the court to redact the analysis.

### E. Information Disclosed in the Declarations Submitted by Torres

The final category of information that Torres seeks to withhold from the public is certain information that it disclosed in the declarations it filed in support of its motions, namely, the contents of an electronic-mail message, information concerning its investigation of the contents of that message, and specific details regarding its post-2010 success rate in being awarded local guard services contracts by the State Department. Torres asserts that "[u]nder the terms of the Protective order in this case, such information is protected and, therefore, exempt from disclosure," Joint Status Report 6, but does not specify how the disclosure of this information would cause it competitive harm. Because a showing of competitive harm is necessary for Torres to meet its burden of overcoming the presumption of public access to court records, the court will not redact this information from its July 31, 2017 Opinion and Order.[4]

### III. CONCLUSION

As set forth above, the court finds that the following information should be redacted from its July 31, 2017 Opinion and Order: information taken directly from Torres's and G4S's proposals, the State Department's initial total evaluated prices for both offerors, the State Department's final total evaluated price for Torres, the independent government price estimate, and the portions of discussion questions and responses that concern G4S's proposed price. The court further finds that the following information should not be redacted from its July 31, 2017 Opinion and Order: information related to Torres's performance of the incumbent contract; the State Department's analysis of whether G4S was a responsible offeror; and the information disclosed by Torres regarding the contents of an electronic-mail message, its investigation of the contents of that message, and its post-2010 success rate in being awarded local guard services contracts by the State Department. The court has incorporated these findings into the

---

[4] Indeed, the court cannot discern how the contents of the specified electronic-mail message and the information concerning Torres's investigation of the same would constitute protected information in light of the fact that this information is summarized in the next paragraph of the court's decision. Nor can the court discern how the disclosure of details regarding Torres's success rate in past competitions for local guard services contracts would harm Torres in future competitions.

contemporaneously filed public version of its decision.  In addition, the parties shall use the court's findings when preparing public versions of the documents that they filed under seal during the pendency of the bid protest.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge